# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| TROY NORTON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CLIENT SERVICES INC., <br><br> Defendant. | Case No.: 18-cv-1601 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Troy Norton is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt arose from an agreement, or series of agreements, to defer payment.

6. Defendant Client Services, Inc. ("CSI") is a foreign business corporation with its principal offices located at 3451 Harry S. Truman Blvd, St. Charles, Missouri 63301.

7. CSI does substantial business in Wisconsin and maintains a registered agent for service of process in Wisconsin at Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

8. CSI is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. CSI is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. CSI is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *October 31, 2017 Letter*

11. On or about October 31, 2017, CSI mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Citibank, N.A." ("Citibank"). A copy of this letter is attached to this Complaint as Exhibit A.

12. The alleged debt referenced in Exhibit A was associated with a "GOODYEAR" credit card account, and the alleged debt was incurred for personal, family, or household purposes.

13. The alleged credit card account debt is an open-end credit plan that is payable in installments, and any purchases made with the account were consumer credit transactions. *See* Wis. Stat. §§ 421.301(10) (defining "consumer credit transaction"); 421.301(15) (defining

2

"credit card"); 421.301(27) (defining "open-end credit plan"); 421.301(30) (defining "payable in installments").

14. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

15. Upon information and belief, Exhibit A is a form debt collection letter, used by CSI to attempt to collect alleged debts.

16. Exhibit A is false, deceptive, misleading, and confusing to the unsophisticated consumer as to the amount, character, and legal status of the alleged debt CSI is attempting to collect from Plaintiff.

17. The header in Exhibit A contains the following:

```
RE: Citibank, N.A.
ACCOUNT NUMBER: XXXXXXXXXXXX8570
NEW BALANCE: $927.56
MINIMUM PAYMENT DUE: $290
REFERENCE NUMBER:     3175
```

Exhibit A.

18. The body in Exhibit A contains the following settlement offer:

We are offering you a settlement amount of $372.00, to settle this GOODYEAR account for less than balance due. This offer is valid until 11/20/2017. If payment of the offered settlement amount is not received in our office by this date, this offer will be withdrawn and will be deemed null and void. We are not obligated to renew this offer. If you are unable to pay the offered settlement amount by this due date, please contact our office for alternative payment options which may be available to you.

Exhibit A.

19. The body in Exhibit A also contains the following:

As of the date of this letter, the balance due is $927.56. If on the date you make a payment, the balance due is greater because of interest or other charges, our office will honor the above settlement offer if received in our office by the above due date.

Exhibit A.

3

Case 2:18-cv-01601-LA    Filed 10/11/18    Page 3 of 15    Document 1

20. Exhibit A is false, deceptive, misleading, and confusing to the unsophisticated consumer as to the amount, character, and legal status of the alleged debt. The consumer would have no way to know which amount was "due" as of the date of Exhibit A.

21. The header in Exhibit A states that the "New Balance" of the account is $927.56 but that the "Minimum Payment Due" (*i.e.,* the portion of the balance comprising the installment payments actually *due* when Exhibit A was mailed) was only $290.

22. However, the body of Exhibit A states: "As of the date of this letter, the balance due is $927.56."

23. The statements that the "minimum payment due" is $290 but the "balance due is $927.56" are inherently contradictory, false, deceptive, misleading, and confusing to the unsophisticated consumer.

24. As a matter of law, the amount due cannot simultaneously be both the entire balance of the account and the minimum payment. Either the debt has been accelerated, and the entire balance is due, or it has not been accelerated, and only the minimum payment (*i.e.,* the past-due and current installments) is due. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.' For example, a debtor might 'owe' a certain amount on a loan, but only a portion of that amount will be 'due' at a particular time."); *see also*, *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004) (debt collector violates the FDCPA by confusing consumer or misleading the consumer to believe it is collecting portions of the balance which "might not yet be due, let alone overdue.").

25. CSI compounds the confusing and misleading effect by offering to settle the "account" for $372.00.

4

26. CSI further exacerbates the confusing and misleading effect by failing to state the amount CSI is attempting to collect on the payment remittance slip that is included with <u>Exhibit A</u>.

27. It is not unusual for banks to hire a debt collector to collect only the "past due" portions of a credit card account, *i.e.,* the missed payments of and fees, rather than the entire balance, and in fact may be improper for a bank to engage a third-party debt collector to attempt to collect portions of the account which are not yet due. *See Barnes v. Advanced Call Ctr. Techs., LLC*, 493 838, 840 (7th Cir. 2007) ("only the past due amount, the amount owed [to the debt collector] can be the 'amount of the debt' under § 809(a)(1).").

28. The different amounts that <u>Exhibit A</u> simultaneously alleges to be "due" render <u>Exhibit A</u> confusing and misleading to the unsophisticated consumer, who would be misled as to the amount CSI was actually attempting to collect.

29. Upon information and belief, Citibank had not accelerated the balance of Plaintiff's account as of the date of <u>Exhibit A</u>.

30. Upon information and belief, the statement that $927.56 is "due" is a false and misleading representation about the amount, character, and legal status of the debt. The entire credit card balance was not "due" when CSI mailed <u>Exhibit A</u> to Plaintiff. The unsophisticated consumer, however, would not know this.

### *November 28, 2017 Letter*

31. In fact, on or about November 28, 2017, CSI mailed another debt collection letter to Plaintiff, regarding this same alleged Citibank credit card account. A copy of this letter is attached to this complaint as <u>Exhibit B</u>.

5

32. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

33. Upon information and belief, Exhibit B is a form debt collection letter, used by CSI to attempt to collect alleged debts.

34. Exhibit B is false, deceptive, misleading, and confusing to the unsophisticated consumer as to the amount, character, and legal status of the alleged debt CSI is attempting to collect from Plaintiff.

35. The header in Exhibit B contains the following:

> RE: Citibank, N.A.
> ACCOUNT NUMBER: XXXXXXXXXXX8570
> NEW BALANCE: $987.82
> MINIMUM PAYMENT DUE: $361
> REFERENCE NUMBER: ▮▮▮▮3175

Exhibit B.

36. The body in Exhibit B contains the following settlement offer:

> We are offering you a settlement amount of $396.00, to settle this GOODYEAR account for less than balance due. This offer is valid until 12/18/2017. If payment of the offered settlement amount is not received in our office by this date, this offer will be withdrawn and will be deemed null and void. We are not obligated to renew this offer. If you are unable to pay the offered settlement amount by this due date, please contact our office for alternative payment options which may be available to you.

Exhibit B.

37. The body in Exhibit B also contains the following:

> As of the date of this letter, the balance due is $987.82. If on the date you make a payment, the balance due is greater because of interest or other charges, our office will honor the above settlement offer if received in our office by the above due date.

Exhibit B.

38. Exhibit B is false, deceptive, misleading, and confusing to the unsophisticated consumer as to the amount, character, and legal status of the alleged debt. The consumer would have no way to know which amount was "due" as of the date of Exhibit B.

6

39. The header in Exhibit A states that the "New Balance" of the account is $987.82 but that the "Minimum Payment Due" (*i.e.,* the portion of the balance comprising the installment payments actually *due* when Exhibit B was mailed) was only $361.

40. However, the body of Exhibit A states: "As of the date of this letter, the balance due is $987.82."

41. The statements that the "minimum payment due" is $361 but the "balance due is $987.82" are inherently contradictory, false, deceptive, misleading, and confusing to the unsophisticated consumer.

42. Upon information and belief, Citibank had not accelerated the balance of Plaintiff's account as of the date of Exhibit B.

43. Upon information and belief, the statement that $987.82 is "due" is a false and misleading representation about the amount, character, and legal status of the debt. The entire credit card balance was not "due" when CSI mailed Exhibit B to Plaintiff. The unsophisticated consumer, however, would not know this.

44. Plaintiff was confused and misled by Exhibits A & B.

45. The unsophisticated consumer would be confused and misled by Exhibits A & B.

### The FDCPA

46. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3

(E.D. Wis. June 12, 2017)); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Patterson v. Howe*, 2018 U.S. Dist. LEXIS 54250, at *21-22 (S.D. Ind. Mar. 30, 2018) (collecting cases and concluding that "this court and a legion of courts around the country have rejected post-*Spokeo* challenges in FDCPA cases."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 995 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D.

Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

47. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

48. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

49. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

50. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

51. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

52. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

53. 15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

54. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date the letter is sent to the consumer, and must state this amount in a manner that would not confuse the unsophisticated consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Chuway*, 362 F.3d at 948 ("It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it."); *see also, Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004) (The FDCPA "requires, among other things, that any dunning letter by a debt collector state 'the amount of the debt' that he's trying to collect.") (citing § 1692g(a(1); *Chuway*, 362 F.3d 944; *Miller*, 214 F.3d at 875). Although *Miller*, *Chuway*, and *Taylor* concerned claims under 15 U.S.C. § 1692g(a)(1), the standard under 15 U.S.C. §§ 1692e and 1692f is the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006); *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 366-67 (7th Cir. 2018); *see also, Spuhler v. State Collection Servs.*, No. 16-cv-1149, 2018 U.S. Dist. LEXIS 128536, at *10-14 (E.D. Wis. Aug. 1, 2018) (discussing *Boucher*, and observing that the Seventh Circuit held that a plaintiff's §§ 1692e and 1692f claims should be analyzed under *Miller* and *Chuway*).

### The WCA

55. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

56. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

57. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

58. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

59. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

60. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See*

Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

61. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

62. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

63. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

64. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I -- FDCPA

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. Exhibits A and B falsely represent the amount, character, and legal status of the debt. CSI represented that the amount "due" was both the "minimum payment" and the entire balance of the account. *See Chuway*, 362 F.3d at 947-48; *Machnik*, 2017 U.S. Dist. LEXIS 160772, at *6.

12

67. The unsophisticated consumer would be confused and misled as to the amount due when Exhibits A and B were mailed.

68. CSI violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692(f), and 1692f(1).

## COUNT II -- WCA

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70. Exhibits A and B falsely represent the amount, character, and legal status of the debt. CSI represented that the amount "due" was both the "minimum payment" and the entire balance of the account. *See Chuway*, 362 F.3d at 947-48; *Machnik*, 2017 U.S. Dist. LEXIS 160772, at *6.

71. The unsophisticated consumer would be confused and misled as to the amount due when Exhibits A and B were mailed.

72. CSI attempted to collect portions of the balance that were not yet due.

73. CSI violated Wis. Stat. § 427.104(1)(j).

## CLASS ALLEGATIONS

74. Plaintiff brings this action on behalf of a Class, consisting of:

(a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibits A and/or B to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes, (d) and representing an amount as the "Minimum Payment Due" in the header of the letter, (e) and a different amount as "the balance due" in the body of the letter, (f) where the collection letter in the form represented by Exhibit A and/or B was mailed between October 11, 2017 and October 11, 2018, inclusive, (e) and was not returned by the postal service.

75. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

13

76. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is Defendant violate the FDCPA and WCA.

77. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

78. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

79. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

80. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: October 11, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)

14

3620 East Layton Avenue<br>
Cudahy, WI 53110<br>
(414) 482-8000<br>
(414) 482-8001 (fax)<br>
jblythin@ademilaw.com<br>
meldridge@ademilaw.com<br>
jfruchter@ademilaw.com<br>
bslatky@ademilaw.com